The first case for argument this morning is United States v. McCarron. I see we have Ms. Young for the appellant and Mr. Bakke. If my math is correct, it's 5 a.m. Thursday where you are?  All right. Well, thank you for joining us this morning and tomorrow morning. Ms. Young, you may proceed. Thank you, Your Honor. Catherine Young for appellant Michael McCarron. I'd like to save, I think we have 15 minutes. I'd like to save five minutes for rebuttal. I'll try to. Unless the court wants me to direct my comments to anything else, I want to start with the challenge to the Before you go further, you're correct that you have 15 minutes, but the clock, I think, started at 10. So can we? Okay. Thank you. Thank you for pointing that out. Okay. The clock is moving. Okay. Okay. So I'll start with insufficient evidence to support the violation of 2422, which is prohibiting enticing an individual under 18 to engage in any sexual activity for which a person can be charged with a criminal offense. The law of attempt in this context is stringent. It requires that the defendant intended to commit each element and did something that was a substantial step toward committing the crime and strongly corroborated his intent to commit the crime. Mere preparation is not a substantial step to constitute a substantial step. His actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. And our point here is that contrary to all those stringent requirements, there was nothing here but explicit sex talk. McCarron repeatedly said, both in his interview and in the context of his text, it's clear that he never intended to meet the minor once he came to accept that she was actually 13. There were no arrangements for a meeting. There was no time or place set for a meeting. What about the exchange of emails that begins, I think it's on 354 of the record, where he says, you know, wish I could be with you right now. She writes back, you know, maybe like Monday. And he seems to agree to that. And less than an hour later sends a message. I am in the room 342. I can't wait to see you. Couldn't a jury infer from that, that that was indeed an arrangement for a meeting? No, your honor, I don't think so. Because she had no, she had no way to get off the base. That was the import of her first, the message that she posted. I can't get off the base. I have no transportation. So there's no way she could have come to his hotel room. And he's told everybody that he posted his hotel room on Craigslist. For some reason, that was out there. But it was clear that she had no way to get off base. So she had no way to come to him. That was the her whole point in posting the Craigslist ad. I need transportation off base. So she couldn't come to him. And those communications, she suggested that they meet the next Monday. There were communications about, you know, the meeting. And then Monday came and went without any, he never responded like setting up a definite time or a place. He never knew where she was. There was no time set. So they were, it was like, as some of the court's cases talk about, just fantasy. He, they talked about meeting, but they never agreed on a time or place. Monday came and went without any effort to set up a meeting. And then on Tuesday, I wonder, I mean, I'm sorry, the way, the way you're describing it, it's almost, I mean, this is not like the UCC where, you know, we're not, we don't have to have, you know, a specific, you know, agreement that would be an enforceable contract under Getsky. You know, it's enough for an attempt that he proposed a rendezvous. And I, to return to the previous question, why couldn't a jury infer from this what this added up to was a proposed meeting? Because Getsky is an outlier, I think. And Getsky talks about, cites a number of cases saying there has to be a meeting or travel to a meeting. And the Getsky case acknowledges that it's an outlier because in that case, Getsky and the minor had previously lived together. And so Getsky was a convicted sex offender. Presumably he couldn't travel to meet the minor. And so Getsky had to entice the minor to come to him. And Getsky and he did so. He offered the minor, you know, pony, a motorcycle, video games. And the court said he did everything he could to get the minor back to Getsky. And the Getsky court says in light of the fact that he did everything he possibly could, we're not going to decide whether an attempt to arrange a meeting is necessary for an attempt to violation of 2422. But Getsky is an outlier because of the preexisting relationship and because of Getsky status. And I think Getsky cites numerous cases in which there's either a meeting where a defendant travels to make the meeting or they specifically arrange a meeting. And I think there are also other cases that this court has, like the Meek case, which the government relies on its brief, which Getsky relied on, in which they say the purpose of these communications has to be for arranging criminal sexual conduct. And in this case, it's clear he made it clear in his statement to the authorities and you can tell in the text of the meetings, he was never going to meet with her. That in that communication where he says, where she says, well, how about Monday? They talk about what's going to go on, but they never agree on a time or a place for the meeting. And then Monday comes and goes with nothing ever happening. He never intended to meet her. And that's clear from the context of these communications. And it's also reaffirmed by the fact that on Tuesday, after Monday is passed without anything arranged, she suggests, well, what about tomorrow? My dad's to be out all day. Why don't you come by tomorrow? And he says, well, what do you want to do? And she says, I'm up for everything. He says, well, got to go. Good night. Without ever arranging anything. It's clear again, he had no intention of meeting her once he accepted that she was 13. And she pursues him and says, I've got to know. I'm freaking out. Are you going to come? You've got to tell me. And he just says, good night. You know, I'll try, but I can't make any commitments. And then on Wednesday, the date that her dad's out all day on a dive trip, he waits until it's practically dark to communicate with her and say, well, I'm still at work. You know, is it too late? What's your address? But at that point, it's illusory because her dad would have returned already from the dive trip or been about to return. So all of these communications make it clear he never intended to meet her. And that's what he told the agents. Now, have I addressed your concern? I understand your position. Okay. I think my point is he was drawing a clear line. He was not going to meet her. He continued to communicate with her once he accepted she was 13. He was absolutely not going to meet her. That was the line that he drew. And my point is that that line, never intending to meet the minor, falls short of an attempt for 24-22 liability. And the Meeks case, I think also the Dinger case says that the purpose of the conduct must be for criminal sexual activity. There's a number of cases that says that there has to be a purpose of engaging in the criminal sexual activity. This court's Hoffa's case says if you engage in texting and fantasy alone, that's not enough for a 24-22 violation. And then there's the Gladish case that the defendant derives satisficarious sexual gratification from texting. Again, that's not a violation 24-22. So I think that the Getsky case says you don't have to have the intent, but there are a number of cases say that you have to have the purpose, that there has to be enough there for the court to say that this would actually have happened had it not been for some independent intervening circumstance. And I think here, sorry. Counsel, I'm sorry. How can we distinguish Getsky? Aren't we controlled by Getsky? You say it's an outlier, but isn't it the law of this circuit? Well, no, because Getsky, there's a footnote that says because of this pre-existing relationship, we're not going to decide. Let me find the exact footnote. We're not deciding here whether or not a meeting is required. Getsky says this is an outlier. So let me see if I can find that footnote. So we're not deciding here whether or not. Which footnote is that? I have the Getsky case in front of me. Which footnote is that? I think it's footnote five. Because Getsky's letters proposed that W returned to Montana, we need not decide whether an attempt to arrange a meeting is required to constitute a substantial step under 2422. So Getsky is saying this is an unusual case. We're not deciding here whether there has to be an attempt to arrange a meeting. And my point is that in every other case, there's a meeting or an attempt to arrange a meeting. Getsky is an outlier because of the unique facts of that case. And the court essentially recognizes it in that footnote saying we're not reaching that issue in this case. And now have I addressed all your honor's questions on that issue? Is it okay for me to move on to another one? Or do you, is there anything else you want me addressed on that insufficiency claim? Okay. Another claim that we make is that there was improper and in fact, untrue testimony by the agent. She was asked, she essentially told the jury that McCarran admitted culpability, admitted intending to engage in criminal sexual conduct with the minor. And that was not true. And the jury was not able to determine that it wasn't true because the government insisted on submitting edited excerpts of the interview to the jury. And they eliminated the part where McCarran said that when he first admitted that he wanted to have sex with Britt, that was when he thought Britt was 18. So the government played the part where McCarran said, well, I want to have sex with her, but omitted the part where he said that that was when I thought she was 18. Later on, when he was, if I can ask that there the failure to present the entire transcript of the interview, but then that objection was expressly withdrawn. So I guess my question is, what do you think is the standard of review for this objection? When there was an express statement, we are no longer objecting to the partial transcripts. Well, I think Your Honor, we're arguing that it's abuse of discretion because of the fact that the court did actually reach the issue. There was briefing. The court repeatedly said, well, I agree with both sides of many cases. The court repeatedly said, I agree with the prosecution on this case. And then when the next day, when the defendant withdrew the objection, the court said, that's a good thing because I agree with the prosecution. So the court repeatedly stated that, indicated that she had looked at the issue and decided it. Additionally, the same issue occurred in Lopez, a case in which also involved Brit, although Lopez went to meet Brit several times, but in Lopez, the same issue arose because the government also submitted misleading excerpts in Brit. So am I confusing the two? Yeah, I'm sorry. Are we talking about the elbow now? No, I'm sorry. I was talking about elbow and you mentioned the excerpts. So that issue was also addressed by the same judge and the same Brit in the Lopez case, which preceded McCarran's case. So this judge had previously decided the issue in Lopez, and it previously indicated repeatedly in this case that she was inclined to deny the issue. And that was the point at which he withdrew it. And that's why we're arguing that it should be plain error. But Lopez says that this practice of misleading excerpts is unacceptable. And the reason that Lopez found it not prejudicial was because Lopez took the stand and testified and basically told the jury everything that had been deleted by the government from the excerpts. Before you run out of time, can I ask you a question about the obscenity count? I mean, I think you're correct that the jury instruction was erroneous and that it referred to a Guam community standard rather than a national community standard. But on plain error review, what would you point to, to show that there's a reason to think that that would have made any difference? Is there anything in the record that would suggest that Guam standards of obscenity are different from national standards? Well, the defense counsel did argue that he thought that standards on the internet were much looser, especially on a Wound for Men posting. So I don't know if there's anything besides that in the record, but he did argue that to the jury that you should have, you know, these standards are very different. Things go on on these Craigslist postings that you wouldn't believe. So I guess if there's no further questions, I'd like to reserve a few minutes of time for rebuttal. Thank you. Thank you. And we'll hear from the government. Good morning. May it please the court. Garth Bathey on behalf of the United States. Appellant's argument that attempted enticement of a minor requires an intent to engage in the underlying illegal sexual activity, as well as a substantial step towards engaging in that illegal sexual activity is foreclosed by Getsky. Getsky made clear that attempted enticement is an attempt to achieve the mental act of assent and stated explicitly that while proximity and travel can be probative, they are not required. Getsky also quoted with approval, United States v. Bailey out of the Sixth Circuit, which recognized while it may be rare for there to be a separation between intent to persuade and the follow up intent to perform the act of persuasion, they are two clearly separate and different intents. So the focus is on an attempted enticement case is the defendant's efforts to obtain assent. And this is what happened in this case. No case in this circuit has said that travel is required. And in fact, we would submit that the case of United States v. Hopus cited in our brief supports our position. Counsel, while you're on Getsky, what is your response to her point about footnote 5 in Getsky? They just they, they, I agree that they left that explicit question unanswered. But I they also again, as I just stated, they said that proximity and travel can be probative, they're not fired. So they seem to be in conflict with each other. But I think Getsky is cited repeatedly in this circuit, as well as other circuits, as being a correct analysis of what the heart of the crime is under 2422. And it's the harm that is caused by piquing the interests of children in engaging in sexual conduct with adults. And so that those enticement and inducement is the crux of the crime, the harm that is caused to children when they begin to even think about such conduct. Now, if I could return to Hopus, because it's important to point out the defendant's argument in this case, is primarily if not exclusively hinged on the out of circuit case of Gladysh, the Seventh Circuit case, this court has already criticized Gladysh, found it not to be persuasive, and recognized that it was bound by Getsky. And that was in United States v. Hopus. Now, while Hopus was not a sufficiency of the evidence case, it was nevertheless, it nevertheless affirmed the exclusion of evidence that defendant was unlikely to engage in the ultimate sexual activity, because that is irrelevant under Ninth Circuit case law. In, I'm sorry, I was just going to ask, I mean, the, the, I mean, I realized Getsky draws this distinction, but I'm not, I'm not sure I'm correctly understanding the distinction between, you know, in persuasion or enticement, inducement or enticement, and the sexual activity. What, what has to be persuaded, induced, or enticed is the engagement in sexual activity, right? So if, if the, suppose the defendant, you know, had the same kinds of sexually oriented communications, but, but said in them, you know, to be clear, I don't ever want to meet you and actually, you know, do any of these things. You know, the jury doesn't have to believe that, but, but if the jury believed that, do you think you could still have a conviction under, under the statute? If the defendant made it clear that like he was never, never had any intent of meeting the person? I believe so, because I would, I believe, I mean, obviously it'd be a long shot case, but I think if you could get a real minor to say, okay, I agree to have sex with you, or if you were to come to my house, I would have sex with you. Then the crime is complete at that point in time. And I mean, even Lopez, the case that just recently came out, recognized that communications intending to groom a victim to engage in sexual activity in the future, constitute substantial steps towards the completion of the crime. Now, if I may point out in this case where I think the agrees that fantasy alone would not be prosecutable under 2422. In this case, consisted of a healthy amount of fantasy talk. The defendant talked about his fantasies. He talked about his masturbation habits. He asked Brit questions about her fantasies. That would not be a crime under 2422. But when the defendant pivoted and engaged in conversations about the crime occurred, for example, his conversations to her saying, I would love to meet you and teach you about sex. I want to slowly rub between your legs, your privates, your vagina. I would love to see how you like it. I wish I could meet you tonight, et cetera, et cetera. That is where the crime is. He is now pivoted and trying to engage, excuse me, persuade her to engage in sexual penetrative conduct, which is illegal under Guam law. Following up on Judge Miller's question, but what if the defendant prefaced it or said afterwards, this is all fantasy. I will never meet you ever at all. This is just all, you know, all fantasy talk. Would that still be a crime? Again, this is very theoretical, but if a minor were to, in the minor's mind, were to agree because of the communications with the defendant to have sex, even though it's not going to occur, yes, that would be a completion of the crime. Again, it's clear from the case law that 2422 focuses on the defendant's intent and the defendant's actions. But I think the harm is clearly directed at what is caused to minors by even thinking about such conduct and to be talked about repeatedly by an adult about engaging in such conduct. And if we have a 13-year-old agreeing after numerous communications with adult to engage in sexual activity, harm has been caused. So, Your Honor, I think there is no way for this defendant to overcome Getsky, Hopus, Bailey, the Outer Circuit case, which correctly focused in on the fact that this is a crime about obtaining the mental assent of a minor. And that was accomplished or was attempted to be accomplished in this case. And there is no reason to disturb the verdict. I don't have anything further unless the court wanted to ask specific questions about what, I'm sorry, if I may. I would like to talk about the recorded interview and the redactions. This case is a far cry from Lopez. In Lopez, the recording was cut off mid-sentence numerous times. In this case, there were about nine edits, which culminated in about eight straight minutes, which concluded the recorded interview. The government would submit that those eight minutes are when the defendant was done minimizing, lying, and had been confronted with the evidence. And we would state that he started making incriminating statements. Despite the fact that this was, you know, what we would say would the truth portion. During this eight minutes, the jury still heard that the agent say, you talked earlier that you really didn't want to do this. You didn't want to meet up with her. The agent said, you talked about guilt. You didn't want to do this. The defendant himself said he didn't consider himself a child predator. This is the only time he did it and he would never do it again, partially because of guilt. The jury also heard him say that he thought Britt was lying about her age and that he was 18. So most of this stuff that the appellant is getting, saying that was properly, improperly, improperly removed from recording still made it into the last portion of eight minutes. And when he said it was definitely wrong, it was definitely wrong. It was definitely wrong. It was definitely in regards to the conduct of this case. It was not about the previous denial that he had made. Most importantly though, assuming there was an abuse of discretion by the judge, we would rely on invited error first. The court does not find invited error, which the government submits it should, since this defendant knowingly relinquished an objection after briefing and researching the case law. If it is not invited error, then it was not an abuse of discretion and there was no prejudice. A reasonable jury, a finder of fact, can affirm this conviction based on strictly the emails and the defendant's agreement that he was the sender of them. So we would submit there is no prejudice in regards to the obscenity instruction. The appellant has made no effort to show prejudice, which is their burden under the plain error standard. And as Judge Miller correctly recognized, there's no showing that there's any difference between the Glamour standard and the national standard. So there's no reason to disturb that count as well. With that, I have nothing further, except that the panel has any questions. Counsel, do you agree that we have to remand with respect to standard condition 12? Yes, your honor, we do. We believe that the cases cited, I believe it's Evans and for the specific purpose of correcting that supervised release condition. Thank you. One follow-up question related to the sentencing. I know the defense counsel didn't object to the PSR, but the district court had this one reference about an initial objection, but it was taken care of by the recording of the 3E1.1, which is the acceptance of responsibility issue. Do you know what that's referring to? It wasn't clear from the transcript what that was referring to. I'm sorry, your honor. I do not know. I was not child counsel. I'm sorry. I can't answer that. Well, thank you, your honor. I'm sorry, Judge Miller, do you have a question? No, I just, anything further from the panel? Right. Thank you. And Ms. Young, I think you have just under three minutes remaining. Thank you. Okay, I'll be very brief. The prosecutor talked about how Getsky says the proximity and travel are not required, but all the cases, as we said, as I argued, Getsky is not liar. All the cases cited by Getsky have either travel or an agreement to meet. The prosecutor cited McCarran's, one of his texts saying he would love to meet you, but omitted the words that McCarran said, I would love meet you one day. In other words, he's talking about meeting at an indefinite time in the future, and that can't be prosecutable because it could be, you know, when she's of age. With respect to the redactions, we discussed this extensively in the brief. They played the part that McCarran said he wanted to have sex with Britt, but omitted the part that at the time he said that he thought Britt was 18. And that's clearly prejudicial. The guilt that McCarran was talking about was the guilt, the knowledge that it was wrong that drove him not to meet with Britt. And that was not played for the jury. And instead they played the, got the agents twisted reconstruction of that, that the prosecutor then relied on repeatedly in closing argument to say that, well, he admitted he was guilty of this. I also wanted to respond to the question about 3E1.1 because we argued that he should have gotten a reduction for 3E1.1. He did admit remorse. He showed contrition throughout the interviews. In the initial draft PSR, he was given that credit for acceptance of responsibility. The government objected to the credit and the credit was withdrawn in the final PSR. McCarran, McCarran's defense counsel requested the credit in response to the draft PSR. It's pretty unusual to grant acceptance of responsibility when the case goes to trial, is it not? Well, I think that as the initial PSR said, if you go to trial, not to and you've consistently shown contrition, which McCarran did, he gave an interview immediately to the agents. He gave them access to everything. He was sobbing during the interview. You know, they used his statements that it was wrong over and over again at trial. He definitely showed contrition. And if you go to trial, not to deny your conduct, but to challenge the application of the law to your conduct, then you're still eligible for acceptance. And that's what the probation officer found. Ultimately, the district court denied acceptance, but not because McCarran hadn't shown contrition, but because the government then raised the issue of, and the probation officer raised the issue of that there had been a violation of pretrial conditions when in fact there had not been because it was never resolved because McCarran's witness, his wife, declined to testify without counsel. So I see my time is up unless there are any further questions. Thank you. All right. Thank you, counsel. We thank both counsel for their helpful arguments and the case just argued is submitted.
judges: O'SCANNLAIN, MILLER, LEE